**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**IN ADMIRALTY**

Case No.:  0:20-cv-60657-RAR

OFFSHORE MARINE TOWING, INC.,
a Florida corporation,

 Plaintiff,

v.

ARTURO GISMONDI, *in personam*, and
"M/V SEA U L8TER," a 2018 53-foot HCB,
document number 1297047, her engines,
tender, tackle, equipment, furnishings and
appurtenances, *in rem*,

 Defendants.
_____/

**RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO STAY AND COMPEL ARBITRATION**

 Comes Now, the Defendants, by and through undersigned counsel, to hereby respond in opposition to the Plaintiff's Motion to Stay and Compel Arbitration [DE 36] as follows:

**Introduction**

 On the eve of an essential due process hearing regarding whether a salvage occurred and whether the claim fairly stated would reduce the significant amount of cash security posted by an owner, Plaintiff has filed a Motion to Stay the entire proceeding, including the prompt post-seizure hearing in favor of a non-public arbitration proceeding -- not agreed to by the Plaintiff -- and pursuant to an unenforceable contract.  For the many reasons set forth herein, the Motion should be denied.

### **Motion to Stay Related to Prompt Post-Seizure Hearing**

While due process (notice and opportunity to be heard) is not required to be given by the Plaintiff *prior* to arresting the res in question, "an immediate post-seizure hearing is an essential element of due process." *Neapolitan Navigation, Ltd. v. Tracor Marine, Inc.*, 777 F.2d 1427, 1430 (11th Cir. 1985). As the Eleventh Circuit Court of Appeals noted, "there is no justification whatsoever for denying the vessel's owner a post-seizure hearing after the *in rem* arrest has taken place, and the vessel's presence is assured." *Id.* Stripping the owner of the right to a post-seizure hearing would violate the owner's constitutional due process. This Court is the only court that can order an arrest and the only court that can set security for the arrest of the res; as such this court is the proper venue to decide whether to uphold its own arrest and whether to reduce security in this matter. As such, the effort to stay the hearing on whether the vacate the arrest or reduce the security should be denied.

### **No Delegation to the Arbitrator**

The alleged contract in question does not refer the decision of arbitrability to any arbitrator and therefore it is in the province of this Court to determine those factors. *See Fantis v. Flywheel Sports, Inc.*, No. 18-24934-CIV, 2019 U.S. Dist. LEXIS 39589, at *19-20 (S.D. Fla. Mar. 11, 2019); and *Gomez Packaging Corp. v. Smith Terminal Warehouse Co.,* No. 11-21992-CIV, 2011 U.S. Dist. LEXIS 165628, 2011 WL 13223733, at *8-9 (S.D. Fla. Sept. 12, 2011). The court should first determine whether an enforceable contract was made; if so, it should then determine whether any exceptions exists to vitiate the clause. 9 U.S.C. § 2.

### **Motion to Compel Arbitration should be Denied**

With respect to the alleged contract, there are numerous independent issues fatal to the Plaintiff's motion; any or all should lead this Court to deny the motion to stay the action and

compel arbitration. First, the contract is not enforceable under the circumstances because it is devoid of material terms such as description of property and any price; in fact, the alleged contract is designed for litigation, not for certainty related to a meeting of the minds on price; price is the *sine qua non* of an enforceable contract and it is wholly missing in this instance.[1]  Second, only the second page of this contract was shown to the owner at the time of the signing; the second page clearly states that the services rendered under this Agreement would be subject to and governed by the jurisdiction of the federal courts, not arbitration.  The owner did not agree to arbitrate and instead relied on the federal courts to adjudicate any dispute as the very terms of Section 7 state; therefore, there is either an agreement by the parties to be governed by the jurisdiction of the federal courts or there is no meeting of the minds – either way, the Plaintiff's efforts to force arbitration should fail.  Third, even if both pages were shown to the owner, the conflict between section 6 and section 7 must be read "most strongly" and "*strictly*" against the drafter (the Plaintiff) and in favor of the owner (the Defendant), meaning the owner should have the right to proceed to challenge the services rendered and amounts due for the services in the federal courts.  Fourth, the arbitration clause is not enforceable because it was entered into under false pretenses, in a moment of duress to the owner, and because the purported arbitration clause that included reference to collateral document (i.e. the arbitration plan) was not provided, not attached, not available online, and was not properly incorporated into the contract under the law, rendering it unenforceable; in fact, the alleged plan provided to the defendant was not made available until more than one month after the litigation already commenced and bears an April 15, 2020 date, meaning it came into existence 26 days *after* the alleged contract was signed.  Fifth, the purported forum/venue for the arbitration proceeding is inequitable and unconscionable as it is an arbitration regime that is

---

[1] To be clear, the alleged contract literally says that no price has been agreed.

fundamentally unfair, not neutral, and even run by the Plaintiff's organization itself, harboring a fleet of its own hand-picked arbitrators and setting forth a self-serving process which eliminates all discovery and even the ability to have live witnesses and cross-examination, a process that would never have been agreed to by the Defendant had it been disclosed at the time of the execution. Finally, Plaintiff has already made numerous judicial admissions that the services were performed voluntarily and not subject to any contract. For any or all of the reasons set forth above and analyzed below, Defendant respectfully requests the Court deny the Plaintiff's Motion to Stay and Compel Arbitration.

## **Unenforceable Contract**

As an initial matter, the purported "contract" is not enforceable, as a matter of law. As a sister court to this District has already noted -- under nearly identical circumstances as this case -- no valid contract is entered into by the parties when these facts occur. *See Reliable Salvage & Towing, Inc. v. 35' Sea Ray*, No. 2:09-cv-329-FtM-99SPC, 2011 U.S. Dist. LEXIS 35515, at *26-29 (M.D. Fla. Mar. 21, 2011). Instead, the document presented in this matter is merely reflective of an approval to receive services from the Plaintiff -- nothing more, nothing less. The agreement here lacks any precise description of the services to be rendered more than mere generalities and is not specific on any price. In fact, Section 4 specifically states "**no agreement on price** or its reasonableness **has been made**…".

"An agreement on price is an essential term. If an essential term has not been agreed upon by the parties, the contract cannot be enforced." *William Wash., PA v. McGladrey & Pullen*, LLP, No. 10-CV-81078-RYSKAMP/VITUNAC, 2011 U.S. Dist. LEXIS 165712, at *6 (S.D. Fla. Apr. 18, 2011). *Also see Uphoff v. Wachovia Securities, LLC, 2009 U.S. Dist. LEXIS 116679, 2009 WL 5031345 *3 (S.D. Fla. 2009)*, quoting *W.R. Townsend Contracting*, 728 So.2d at 300; *Winter*

*Haven Citrus Growers Ass'n v. Campbell & Sons Fruit Co.*, 773 So.2d 96, 97 (Fla.Dist.Ct.App.2000).

"A prime example of an essential term is price." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301-02 (S.D. Fla. 2012). *Drost v. Hill*, 639 So.2d 105, 106 (Fla.Dist.Ct.App.1994) (contract unenforceable where "the parties had not reached a meeting of the minds on a material term, namely, the price"); *Louis Sherry Associates, Inc. v. Opatut*, 414 So.2d 1148 (Fla.Dist.Ct.App.1982) (amount a party is willing to pay for services is an essential term). Moreover, "[c]ustom in a particular industry . . . cannot change the requirement of contract law that the parties mutually agree on the essential term of price." *Uphoff, 2009 U.S. Dist. LEXIS 116679, 2009 WL 5031345 *3*.  None of the terms or rates used to compute the Plaintiff's salvage charge were made known to the Defendant in this case at the time of the services.  The contract says no price was reached and there is some reference to an international treaty on salvage that was also never presented to the Defendant or made available to him.  There was no agreement to fees.  In fact, the alleged contract literally says there is "no agreement on price."

Like the salvor in *Reliable Salvage & Towing, Inc.*, Plaintiff here places great emphasis on the act of Mr. Gismondi signing the contract, yet as the Court in *Reliable Salvage & Towing, Inc.* found, "the written 'contract' is of no moment since it is not completed (with a price) nor are any services to be rendered described within it." So here.  Where there is no price and no description of the services to be rendered (such as the vessels used or the tow lines or the services specifically to be rendered, even after the Plaintiff's representative, described as a qualified and credentialed employee, assessed the situation, the vessel, and its needs) there is no contract.

Like the owner in *Reliable Salvage & Towing, Inc.*, the owner here, Mr. Gismondi, had "no previous business experience with (Plaintiff) whether in salvage services or vessel repair services" and "(t)hus, he had no prior experience that would allow him to calculate the costs of the salvage operation on the (vessel)." Furthermore, as in *Reliable Salvage & Towing, Inc.,* "it appears that neither Capt. … ever discussed the actual rate and costs of the salvage operation." As such, the Court should find like the court did in *Reliable Salvage & Towing, Inc.* "there was no written or verbal contract between the Parties regarding the salvage operation." Because those circumstances almost identically mirror the negotiations and situation of this case, the Court should conclude "that essential terms were missing from the contract and the salvage could not be considered a contract salvage." *Id.*

## The Second Page of the Contract

All parties agree this paper was signed when Captain Sisler climbed aboard the Defendant's vessel under precarious circumstances as the vessel was aground, pulled out a contract from the box he carried, and presented it for signature. Capt. Sisler conversed with the Defendant; the Defendant disputed the actions were salvage. The Defendant was presented a piece of paper and Sisler stated he needed it signed so he could call in a vessel to assist and start the work. Mr. Gismondi recalls only seeing one page, the page he signed.[2] As it turns out, there is only one page, but with two sides, one of which was not made known by Sisler to Mr. Gismondi.[3] Captain Sisler had affixed the document to a clipboard with only the second page facing the Defendant. Plaintiff did not note there were terms or conditions on the reverse side, let alone ones that squarely conflict with those on the signature page. The signature page is clear; it does not mention arbitration.

---

[2] A Sworn Statement shall accompany this filing supporting the facts set forth herein; due to the truncated briefing schedule, it could not be filed at the time of the filing deadline.
[3] Only after the action was filed did the Defendant learn there was a second page paper signed.

Instead, it reads as follows: "It is understood that services performed hereunder (without qualification) **are governed by** the Admiralty and Maritime Jurisdiction of **the Federal Courts**…" (emphasis and parenthetical added). There is no mention on this side of the page of arbitration. It then further mentions both "Trial and Appellate Courts," without any mention of arbitration in Section 7. Unbeknownst to the owner, the reverse side contained an arbitration clause that was not disclosed, presented, or agreed to by the owner and squarely conflicts with the clause the owner saw and signed on the second page. As such, the efforts to force arbitration should be denied.

## Ambiguity Construed Against the Drafter

Under both Florida law and federal maritime law, ambiguous provisions in a maritime contract are interpreted in favor of the Owner in this matter and "most strongly" and "strictly" against the drafter, i.e. the Plaintiff Offshore Marine Towing, Inc. *See St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1191 n.19 (11th Cir. 2009), quoting *e.g., Edward Leasing Corp.*, 785 F.2d at 889 ("The traditional rule of construction in admiralty cases is to construe the contract language most strongly against the drafter . . . ."); and *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("An ambiguous provision is construed in favor of the insured and strictly against the drafter.").

Even if the entire contract had been presented and turned over for the Defendant to understand that there were terms on the reverse side of the page presented for signature, Sections 6 and 7 are still ambiguous at best, as to where the case will be determined. Section 6 calls for arbitration (and only in instances regarding a dispute over the salvage services rendered or the reasonableness of fees; Plaintiff's own alleged contract says that there is no agreement on reasonableness of fees). Nevertheless, Section 7 says the services are governed by the Admiralty

and Maritime Jurisdiction of the Federal Courts. Because of these conflicting, unclear and ambiguous clauses which, as a matter of law, must be most strongly strictly read against the drafter – in this case the Plaintiff – and in favor of the Defendant Owner, the result should keep the case in the federal courts and out of arbitration.

### **Arbitration Provision Plan is not Incorporated into the Contract**

Notwithstanding the above, Section 6 on its own is even unenforceable. Section 6 does not set forth the terms or forum for the arbitration. Instead, Section 6 refers to a secret salvage plan known only to Offshore Marine and not the Defendant, entitled "The Boat Owners' Association of the United States' Salvage Arbitration Plan." Not only is the Defendant not a member of the Boat Owners' Association of the United States (a member organization), but also the Plan was not attached to the contract, the Owner was never provided a copy of this Plan, the Plan is not available anywhere online[4], and the Owner was not directed to where he could find a copy of this "Plan".

The first time any Plan was produced to the Defendant was when Plaintiff's counsel sent an e-mail to Defendant's counsel on May 4, 2020, over a month after the Complaint was filed. [Exhibit A hereto]. Notably, the alleged operative document presented on May 4, 2020 via e-mail as the "Plan" that Mr. Gismondi allegedly agreed to on March 19, 2020 was actually dated April 15, 2020 – 26 days ***after*** the incident occurred and the alleged contract was signed. *Id.* Certainly, Mr. Gismondi did not and could not agree to a secret plan that was not even in existence at the time.

Notwithstanding the fact the "Plan" was apparently put in place 26 days after the purported agreement was entered into, even if it was in place at the time of execution, it is not enforceable. This court has addressed and refused to enforce arbitration agreements that reference documents

---

[4] Defendant respectfully invites this Court to search (as Defendant's counsel did) online for such a plan. Defense counsel's search yielded no results setting forth any plan.

to incorporate into arbitration clauses under nearly identical circumstances where the document is not provided, attached, or made immediately available by instruction. *See Fantis v. Flywheel Sports, Inc.*, No. 18-24934-CIV, 2019 U.S. Dist. LEXIS 39589, at *19-20 (S.D. Fla. Mar. 11, 2019); and *Gomez Packaging Corp. v. Smith Terminal Warehouse Co.,* No. 11-21992-CIV, 2011 U.S. Dist. LEXIS 165628, 2011 WL 13223733, at *8-9 (S.D. Fla. Sept. 12, 2011).

The *Fantis* case is particularly instructive, running the gamut on a wide variety of issues prevalent in this matter, all of which show why the clause sought to be enforced should be denied. "Under Florida law, [a] document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." *Id.,* citing *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999). Both elements must be present. *See Spicer v. Tenet Fla. Physician Servs., LLC,* 149 So. 3d 163, 168 (Fla. 4th DCA 2014) (finding that an arbitration agreement had not been incorporated by reference where only one element was met). Courts have found that even a simple reference that the agreement is "subject to" external or collateral documents is not enough. *Affinity Internet, Inc. v. Consolidated Credit Counseling Services, Inc.*, 920 So. 2d 1286 (Fla. 2d DCA 2006). Here there is no language that specifically states the parties intent to be bound by the Plan and further there is no specific language that incorporates that plan into the Agreement. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 328 F. Supp. 2d 1319, 1333 (S.D. Fla. 2004). ("A contract must contain 'words . . . indicating an intention that [the parties] between themselves, [agree] to be bound by the [collateral document]." There is no clear intent by the parties that says specifically the Plan is included and incorporated into the Agreement, as required. As such, the first element for an incorporation by reference is not met.

More telling though is that the collateral document, i.e. the Plan, was not attached to the contract, not provided to the Defendant, is/was not accessible online, and the Defendant was never provided instructions to get the document in question. Florida law requires that the incorporated or collateral document be specifically described and also provided. *See Lowe v. Nissan of Brandon, Inc.,* 235 So. 3d 1021, 1026 (Fla. 2d DCA 2018). Where the collateral document was not attached to the agreement, where there were no specific directions in the letter as to how the (signatory) could obtain a copy of or locate the document, it could not be enforced. *Id.* citing *In Spicer v. Tenet Fla. Physician Servs.*, LLC, 149 So. 3d 163, 164 (Fla. 4th DCA 2014). In that case, the appellate court reversed the trial court's decision to compel arbitration and -- even though the signatory was provided with access to the document approximately 17 days after signing -- the Court still found that inaccessibility at the time of execution coupled with the contract's failure to set forth any procedures for arbitration rendered the arbitration clause unenforceable as the document was not attached and no location was given as to where the collateral document could be found. So here.

Florida law requires that a contracting party be able to access the collateral document either because it was sufficiently described in the contract or because a copy of the collateral document was provided. *See BGT Grp., Inc. v. Tradewinds Engine Servs.*, LLC, 62 So. 3d 1192, 1195 (Fla. 4th DCA 2011) (finding no incorporation by reference where, *inter alia*, "the quote and purchase order . . . provide[d] no information at all about where the 'terms and conditions' might be located"); *Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.*, 920 So. 2d 1286, 1288-89 (Fla. 4th DCA 2006) (finding no incorporation by reference where "the contract contain[ed] no clear language evidencing an intention of the parties to incorporate the terms of the collateral document" and "[n]ot only was the collateral document not attached to the contract, but [the

customer] also was never at any time subsequent to the signing of the contract given a copy of the collateral document or the information contained therein.").

In *Fanta*, the Court analyzed the above cases and held that because the plaintiff never received a written copy of the collateral document and because the contract did not instruct the plaintiff on where it could locate collateral document referenced in the contract, did not provide a hyperlink or website address where the collateral documents could be located, or even disclose the terms of the collateral document, it could not be enforced and incorporated by reference fails.

The Court cannot now rewrite the arbitration provisions. *Ting v. AT & T*, 182 F. Supp. 2d 902, 935 (N.D.Cal. 2002); *Plaskett v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 345 (D.V.I. 2003). When the central purpose of an arbitration provision is tainted, then the provision as a whole cannot be enforced. *Id*. Thus, the Court should refuse to enforce the arbitration provisions. *See, e.g., Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 788 (9th Cir. 2002).

In *Gomez*, another case analyzed in *Fantis*, the defendants there argued that its terms and conditions were incorporated by reference. In that case, the party seeking the enforcement took the position that the non-moving party was "on notice of the terms' existence and should have asked for a copy." In rejecting the defendants' argument, this Court ruled that "the Terms and Conditions never constituted part of any agreement between [the plaintiff] and Defendants" because "mere language indicating the potential existence of the Terms and Conditions, without more, did not put [the other party] on notice of their content. It [was] of no import that [the plaintiff] never asked for a copy of the Terms and Conditions." *See Gomez* 2011 U.S. Dist. LEXIS 165628, [WL] at 9 (emphasis added); noted with approval by *Fantis v. Flywheel Sports, Inc.*, No. 18-24934-CIV, 2019 U.S. Dist. LEXIS 39589, at *19-20 (S.D. Fla. Mar. 11, 2019). Because thee as a mere

reference to the Plan without putting Mr. Gismondi on notice of its actual content renders the clause unenforceable.

## **Fraud and Duress**

Two further factors that will undue an arbitration clause are fraud and duress. 9 U.S.C. §2. (should there be any agreement to arbitrate grounds that "exist at law or in equity for the revocation of any contract" with vitiate the arbitration clause.) While Defendant believes he was fraudulently induced into the entire agreement, he also has evidence that he was fraudulently induced into the arbitration clause specifically. As mentioned above, Mr. Gismondi was presented a one-page document with the signature page facing him on a clipboard to sign in order for Captain Sisler to start the work. The page facing Gismondi read that the services are governed by the jurisdiction of the federal courts, leading him to believe he could try any dispute in federal court. While showing him that page, the Plaintiff intentionally did not mention and therefore omitted the material fact that the reverse side contained completely contradictory terms and conditions, i.e. ones dealing with an arbitration run and organized solely by the Plaintiff through a stable of their own arbitrators, without ability to take discovery, call live witnesses, or engage in cross-examination. Defendant would have never entered into an agreement to arbitrate under that scenario. Furthermore, Plaintiff had just run aground and was aboard his vessel with guests. The execution of the contract to commence assistance was in extremis, executed without the real ability to engage in an arms' length negotiation and transaction. Plaintiff was in a superior position to know the circumstances surrounding the vessel and the Defendant was in duress when signing the contract, incapable of understanding and prevented from knowing issues such as the purported arbitration plan or even the Salcon 89 International Treaty on Salvage; it would be inequitable,

unfair and unconscionable to expect the owner to be in a position to review an entire international treaty and a secret plan inaccessible to the public while aboard his grounded vessel.

### Fundamentally Unfair and Unconscionable

Even if this Court were to overlook all the factors above and find the parties reached an agreement to arbitrate, the Court should still not rule in favor of the Plaintiff. The entire arbitration proceeding and regime is literally run *by the Plaintiff's parent company*, of which Plaintiff is their franchisee. This is no independent forum or venue; it is a creation of the Plaintiff and its parent; they select the forum, the rules, and maintain a stable of their own arbitrators; they remove the ability to conduct discovery, to present live witnesses, and to engage in any cross-examination. It is inequitable, unconscionable, and fundamentally unfair to force an unwitting Defendant to arbitrate in a forum and under a regime literally run by its opposing party, which controls the arbitrators and controls the process and controls the ability to present evidence and cross-examine witnesses. For this reason alone, the Court should deny the Plaintiff's Motion.

### Judicial Admissions

Finally, this Court should deny the Plaintiff's Motion due to its own judicial admissions in the matter. A judicial admission is a statement by a party or its counsel that removes a factual issue from dispute in a litigation and binds both parties on trial and appeal. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) ("[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."). As the Plaintiff has judicially admitted throughout the papers it filed with the Court, Plaintiff admits the services rendered were *voluntary* and not pursuant to any contract. [see e.g. DE 33, Pg. 2, Pg. 5, ("…there is no argument that OMT's actions were not voluntary.") and Pg. 6 ("There has been no allegation that the salvage services rendered to the Plaintiff were

not voluntary"). This judicial admission is fatal to the Plaintiff now pivoting in the exact opposite direction and claiming the services rendered were performed under a contractual obligation and not as a voluntary service, which has been repeatedly asserted in the Plaintiff's briefing filed with this Court in this matter. *Id.*

WHEREFORE, for the reasons set forth herein, the Defendants respectfully request the Court deny the Plaintiff's Motion.

DATED: May 21, 2020.                                    Respectfully submitted,

**WAGNER LEGAL**
Attorney for Defendants
3050 Biscayne Blvd., #904
Miami, FL 33137
Telephone: (305) 768-9247
Facsimile: (305) 306-8598
By: */s/ Scott A. Wagner*
Scott Wagner, Esq.
Florida Bar No. 10244

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 21, 2020, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Scott A. Wagner*
Attorney